UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| JDS UNIPHASE CORPORATION BENEFITS COMMITTEE of the JDS UNIPHASE CORPORATION EMPLOYEE 401(k) RETIREMENT PLAN Plaintiff, v. DAVID M. KORNACKI, as Administrator of the Estate of Kevin P. Kornacki; MABEL TAVARES, an individual formerly known as MABEL D. KORNACKI; and DOES 1 through 20, inclusive, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 05-11499-KPN |

## ANSWER, COUNTERCLAIMS AND CROSS CLAIMS OF DAVID M. KORNACKI AND IMPLEADER OF THE JDS UNIPHASE CORPORATION EMPLOYEE 401(k) RETIREMENT PLAN

David M. Kornacki, as Administrator of the Estate of Kevin P. Kornacki ("Administrator Kornacki") hereby: (1) answers the Complaint of JDS Uniphase Corporation Benefits Committee of the JDS Uniphase Corporation Employee 401(k) Retirement Plan (the "Committee"); (2) states the following counterclaims against the Committee; (3) states the following cross claims against Mabel Tavares; and (4) impleads the JDS Uniphase Corporation Employee 401(k) Retirement Plan (the "Plan").

### ANSWER OF ADMINISTRATOR KORNACKI

### JURISDICTION AND VENUE

1. Paragraph 1 contains legal conclusions to which a response is not required. Administrator Kornacki also notes that this case was transferred to Massachusetts by order of the United States District Court for the Northern District of California.

F:\Files\Kornacki\JDS Uniphase\ANSWER final.doc

1

2.   Administrator Kornacki denies that venue was proper in the Northern District of California. As recognized by the United States District Court for the Northern District of California in its Order transferring this case from California to Massachusetts, venue is proper in the United States District Court for the District of Massachusetts, Western Division, because both Defendants reside in Massachusetts.

PARTIES

3.   Administrator Kornacki admits that the Committee is a fiduciary with respect to the Plan. Administrator Kornacki admits that the Plan is administered in San Jose, California. Administrator Kornacki denies that the Plan attached to the Complaint at Exhibit 1 is a true and correct copy of the Plan Document relevant to this action because Kevin Kornacki ("Decedent") died on April 11, 2003 and the Plan attached at Exhibit 1 was not adopted until May 22, 2003. See Exhibit 1 attached to Plaintiff's Complaint at P. 27. Administrator Kornacki lacks sufficient knowledge to admit or deny the remaining allegations because the Plan attached to the Complaint at Exhibit 1 is not the Plan Document relevant to this action.

4.   Administrator Kornacki admits the allegations contained in Paragraph 4.

5.   Administrator Kornacki admits the allegations contained in Paragraph 5.

6.   Administrator Kornacki lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 6.

7.   Paragraph 7 contains a definition to which a response is not required.

RELEVANT FACTS

8.   Administrator Kornacki admits the allegations contained in Paragraph 8.

9.   Administrator Kornacki lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 9.

10.  Administrator Kornacki denies the allegations contained in Paragraph 10 because the Plan from which it cites is not the Plan relevant to this to this action, please see Paragraph 3 above.

11.  Administrator Kornacki admits that Decedent provided a completed 401(k) Beneficiary Designation on or about May 16, 1995.  Administrator Kornacki lacks sufficient knowledge regarding whether or not it was in accordance with the terms of the Plan because the Plan attached to the Complaint at Exhibit 1 is not the relevant Plan.  See Paragraph 3 above.

12.  Administrator Kornacki admits the allegations contained in Paragraph 12.

13.  Administrator Kornacki admits the allegations contained in Paragraph 13.

14.  Administrator Kornacki denies the allegations contained in Paragraph 14 because the Committee fails to state the entirety of a document that is the best evidence of its contents.

15.  Administrator Kornacki denies the allegations contained in Paragraph 15 because the Committee fails to state the entirety of a document that is the best evidence of its contents.

16.  Administrator Kornacki denies the allegations contained in Paragraph 16 because the Committee fails to state the entirety of a document that is the best evidence of its contents.

17.  Administrator Kornacki denies the allegations contained in Paragraph 17 because the Committee fails to state the entirety of a document that is the best evidence of its contents.

18.  Administrator Kornacki admits the allegations contained in Paragraph 18.

19.  Administrator Kornacki lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 19.

20.  Administrator Kornacki admits the allegations contained in Paragraph 20.

21.  Administrator Kornacki admits that JDS distributed all of the 401(k) assets to Tavares. Administrator Kornacki lacks sufficient knowledge to admit or deny whether or not it was

in accordance with the terms of the Plan because the Plan attached to the Complaint at Exhibit 1 is not the relevant Plan. See Paragraph 3 above.

FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT
(AGAINST ALL DEFENDANTS)

22. Administrator Kornacki realleges each of the paragraphs above as if fully set forth herein.

23. Administrator Kornacki admits that he claims that the estate of Decedent or the beneficiary provided for under the Plan in the absence of a designated beneficiary is entitled to receive distribution of the 401(k) account. Administrator Kornacki lacks sufficient knowledge to admit or deny that Tavares contends the Plan distributed the 401(k) provisions in accordance with the Plan. Administrator Kornacki denies the remaining allegations in Paragraph 23.

24. Paragraph 24 contains a legal conclusion to which a response is not required.

25. Paragraph 25 contains legal conclusions to which a response is not required.

SECOND CAUSE OF ACTION FOR INJUNCTION AND CONSTRUCTIVE TRUST
(AGAINST DEFENDANT TAVARES)

26. Administrator Kornacki realleges each of the paragraphs above as if fully set forth herein.

27. Paragraph 27 contains legal conclusions to which a response is not required.

28. Administrator Kornacki lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 28.

29. Paragraph 29 contains legal conclusions to which a response is not required. To the extent Paragraph 29 contains any facts, Administrator Kornacki lacks sufficient knowledge to admit or deny them.

30. Paragraph 30 contains legal conclusion to which a response is not required. To the extent

Paragraph 30 contains any facts, Administrator Kornacki lacks sufficient knowledge to

admit or deny them.

## COUNTERCLAIMS AGAINST THE COMMITTEE, CROSSCLAIMS AGAINST DEFENDANT TAVARES, AND CLAIMS AGAINST THE IMPLEADED PLAN

David M. Kornacki, as Administrator of the Estate of Kevin P. Kornacki impleads the

JDS Uniphase Corporation Employee 401(k) Retirement Plan and asserts the following

counterclaims and claims against the JDS Uniphase Corporation Benefits Committee of the JDS

Uniphase Corporation Employee 401(k) Retirement Plan and the JDS Uniphase Corporation

Employee 401(k) Retirement Plan (hereinafter collectively referred to as "JDS"), and the

following cross claims against Mabel Tavares.

### PARTIES

1.    David M. Kornacki files these counterclaims, cross claims and claims for violations of the

Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§

1001, et. seq., breach of contract, and appropriate equitable remedies.

2.    David M. Kornacki ("Administrator Kornacki") is an individual of legal age, a resident of

Massachusetts and the administrator of the Estate of his brother, Kevin Kornacki (the

"Estate"). Prior to his death, Kevin Kornacki ("Decedent") was a vested participant in the

JDS Uniphase Corporation Employee 401(k) Retirement Plan within the meaning of

ERISA. Administrator Kornacki has standing to bring these claims, cross claims and

counterclaims on behalf of Decedent and his Estate.

3.  The JDS Uniphase Corporation Employee 401(k) Retirement Plan (the "Plan") is a 401(k) Defined Contribution Plan, which was established and maintained by the JDS Uniphase Corporation, the Plan's Sponsor, for its employees, including the Decedent.

4.  The JDS Uniphase Corporation Benefits Committee of the JDS Uniphase Corporation Employee 401(k) Retirement Plan (the "Committee") is the Plan Administrator for the Plan and has a principle place of business in San Jose, California. The Committee is the ERISA claim fiduciary responsible for making all final determinations concerning a Plan participant's eligibility for and a beneficiary's entitlement to benefits under the Plan.

5.  The Committee and the Plan are hereinafter collectively referred to as "JDS."

6.  Mabel Tavares ("Tavares") is an individual of legal age with a residence located at 129 Brewster Street, Springfield, Massachusetts. Tavares is the ex-wife of Decedent.

## JURISDICTION

7.  This Court has jurisdiction over these claims pursuant to ERISA § 502(e)(2) and (f).

8.  The Court also has jurisdiction over these claims, pursuant to 28 U.S.C. § 1331, providing for Federal Question Jurisdiction, because this action involves claims pursuant to ERISA.

## FACTUAL ALLEGATIONS

9.  On May 16, 1995, Decedent executed a form entitled "401(k) Beneficiary Designation Form" ("Beneficiary Designation") naming his then wife, Tavares, as the sole beneficiary of his interest in the Plan. See Beneficiary Designation attached to the Complaint at Exhibit 2.

10. The marriage between Decedent and Tavares failed and on October 12, 2001, Decedent and Tavares executed a Marital Agreement ("Marital Agreement"), which provided for, inter

*alia*, the distribution of all marital property. See Marital Agreement, attached hereto at Exhibit A. [1]

11. By the clear and unambiguous terms of the Marital Agreement, Tavares expressly released Decedent from all claims against his property and his estate, including all claims to Decedent's 401(k) Benefits. See Exhibit A.

12. The Marital Agreement also mandated that Decedent transfer the sum of $8,534.00 to Tavares from his interest in the Plan by a Qualified Domestic Relations Order ("QDRO"). See Exhibit A.

13. The Marital Agreement further stated that upon Decedent's payment of the $8,534.00, Decedent "shall retain his 401K plan as **his separate property.**" See Exhibit A (emphasis added).

14. On December 6, 2001, the Hampden County Probate and Family Court entered a Judgment of Divorce Nisi based on its findings that the Marital Agreement was "fair, equitable and reasonable, voluntarily entered into, and not the product of fraud, coercion or duress." See Judgment of Divorce Nisi, attached to Complaint at Exhibit 3.

15. By letter dated December 14, 2001, Decedent's attorney informed JDS that Decedent and Tavares were divorced and requested the Plan's QDRO requirements in order to comply with the Marital Agreement. See Exhibit B, attached hereto.

16. On September 2, 2002, Decedent and Tavares executed a QDRO limiting the amount payable to Tavares to $8,354.00. See QDRO, attached to Complaint at Exhibit 4.

17. By letter dated September 13, 2002, Decedent's former Counsel sent JDS the QDRO. See Exhibit C, attached hereto.

---

[1] All Exhibits attached hereto have been redacted to eliminate all personal identifiers in accordance with Local Rule 5.3 of this Court.

18. In October of 2002, JDS paid Tavares the sum of $8,354.00 as Alternate Payee pursuant to the terms of the QDRO.

19. After Decedent's divorce from Tavares, JDS sent Decedent Retirement Account Summaries regarding his 401(k) assets that stated: "Beneficiary Information: You have not designated a beneficiary for your retirement account."

20. On April 11, 2003, Decedent died unexpectedly and in testate.

21. On May 22, 2003, the Probate and Family Court of Massachusetts, Hampden Division, appointed Administrator Kornacki as Administrator of Decedent's Estate.

22. After being appointed administrator, Administrator Kornacki wrote to JDS on July 22, 2003, and July 30, 2003, seeking payment of Decedent's retirement benefits under the Plan ("401(k) Benefits). See Exhibit D, attached hereto.

23. By letter dated August 4, 2003, JDS's Associate General Counsel, Attorney Andrew Pollack, denied the Estate's claim to Decedent's retirement benefits under the Plan. See Exhibit E, attached hereto.

24. By a letter dated August 21, 2003, JDS's outside counsel, Attorney Timothy G. Verral, also denied the Estate's claim. See Exhibit F, attached hereto.

25. Upon information and belief, in August 2003, the Committee paid Tavares all of the 401(k) Benefits.

26. By letter dated August 10, 2004 to JDS, in an attempt to avoid litigation, Administrator Kornacki, through counsel, set forth the basis of the Estate's claim.

27. JDS indicated several times that it would respond to Administrator Kornacki's concerns.

28. By email dated November 23, 2004, Administrator Kornacki's counsel sent counsel for JDS a draft of the Complaint Administrator Kornacki intended to file.

29. Without ever responding to Administrator Kornacki's concerns the Committee filed this Complaint in California, over 3,000 miles away from both Defendants and the place Decedent worked, lived and died.

## COUNT I:  CLAIM FOR BENEFITS
## AGAINST THE COMMITTEE AND THE PLAN (collectively "JDS")

30. Administrator Kornacki realleges each of the paragraphs stated above as if fully set forth herein.

31. There was no beneficiary designation under the Plan.

32. As such, the benefits must be paid to the Estate, or as otherwise provided for under the Plan in absence of a beneficiary designation.

33. To date JDS has not paid any 401(k) Benefits to the Estate.

34. Pursuant to ERISA § 502(a)(1)(B), Administrator Kornacki, on behalf of Decedent and Decedent's Estate, seeks payment of the 401(k) Benefits due under the terms of the Plan to the Estate or the beneficiary otherwise provided for under the Plan in the absence of a designated beneficiary.

## COUNT II: CLAIM FOR BREACH OF FIDUCIARY DUTIES
## AGAINST THE COMMITTEE AND THE PLAN (collectively "JDS")

35. Administrator Kornacki realleges each of the paragraphs stated above as if fully set forth herein.

36. By letter dated December 14, 2001, Decedent's attorney notified JDS of Decedent's divorce from Tavares.  See Exhibit B, attached hereto.

37. After Decedent's divorce from Tavares, JDS sent Decedent Retirement Account Summaries regarding his 401(k) assets that stated:  "Beneficiary Information: You have not designated a beneficiary for your retirement account."

38. Decedent relied, to his detriment, on JDS' misrepresentations with respect to the beneficiary designation on his 401(k) Plan.

39. Despite its representations, JDS now asserts that there was a beneficiary designation.

40. As a result of JDS' failure to inform Decedent of the correct beneficiary designation while he was alive and its representation that there was no beneficiary, JDS is now equitably estopped from claiming otherwise.

<u>COUNT III:  CLAIM FOR FAILURE TO PROVIDE FULL
AND FAIR REVIEW AS REQUIRED BY ERISA
AGAINST THE COMMITTEE AND THE PLAN (collectively "JDS")</u>

41. Administrator Kornacki realleges each of the paragraphs stated above as if fully set forth herein.

42. ERISA § 503 mandates the minimum claims procedure which must be met by all employee benefits plans, and those administering those plans as follows:

    a.  In accordance with the Regulations of the Secretary, every employee benefit plan shall:
        i.  provide adequate notice in writing to a participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial in a manner reasonably calculated to be understood by the participant; and
        ii.  afford a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

43. The Department of Labor's Regulations promulgated under ERISA § 503 at 29 C.F.R. § 2560.503-1(g)(1) mandate that all plan administrators provide claimants written notification of any adverse benefit determination, which must include:

    a.  (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
    b.  (iv) a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under Section 502(a) of the Act following the adverse benefit determination on review.

44. ERISA § 503(2) and 29 C.F.R. § 2560.503-1(h) mandate that every employee benefit plan provide a claimant with the opportunity for a full and fair review of an adverse benefit determination.

45. The Plan also provides for review and appeal procedures.

46. JDS failed to comply with the requirements of ERISA, the Regulations and the Plan and the Estate was denied the opportunity for full and fair review of its claim.

## COUNT IV: CLAIM FOR BREACH OF CONTRACT AGAINST MABEL TAVARES

47. Administrator Kornacki realleges each of the paragraphs stated above as if fully set forth herein.

48. Decedent and Tavares entered into a binding Marital Agreement and QDRO (collectively referred to as "the Contract").

49. In the Contract, Tavares explicitly waived her right to Decedent's 401(k) Benefits.

50. Tavares' acceptance of the 401(k) Benefits from JDS constitutes a breach of the Contract.

## COUNT V: CLAIM FOR RESTITUTION AND THE IMPOSITION OF A CONSTRUCTIVE TRUST AND AN EQUITABLE LIEN AGAINST MABEL TAVARES

51. Administrator Kornacki realleges each of the paragraphs stated above as if fully set forth herein.

52. In August of 2003 JDS transferred all of the 401(k) Benefits to Tavares.

53. Prior to receiving the 401(k) Benefits, Tavares had waived any interest she previously had to the 401(k) Benefits Estate by: 1) executing the Marital Agreement; and 2) by executing the QDRO.

54. Tavares is not entitled to the 401(k) Benefits and Administrator Kornacki seeks the imposition of a constructive trust and/or an equitable lien on all funds received from JDS.

COUNT VI: CLAIM FOR ATTORNEYS' FEES PURUSANT TO ERISA § 502(g) AGAINST THE COMMITTEE AND THE PLAN (collectively "JDS")

55. Administrator Kornacki realleges each of the paragraphs stated above as if fully set forth herein.

56. Under the standards applicable to ERISA, Administrator Kornacki is entitled to recover "a reasonable attorney's fee and costs of the action" pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g).

57. JDS has the ability to satisfy the award.

58. The entitlement of the Estate or the beneficiary otherwise provided for under the Plan in the absence of a designated beneficiary to the 401(k) Benefits is clear.

59. JDS acted in bad faith in its handling and denial of the Estate's claim. JDS also acted in bad faith when it filed this action 3,000 miles away from the residence of Defendants after receiving notice that Administrator Kornacki intended to pursue legal remedies for the proper payment of the 401(k) Benefits.

60. The award of attorneys' fees against JDS will deter others acting under similar circumstances.

**PRAYER FOR RELIEF**

Wherefore, Administrator Kornacki respectfully prays that the Court:

1. Declare, adjudge and decree that the Estate or the beneficiary otherwise provided for under the Plan in the absence of a designated beneficiary is entitled to the full value of the 401(k) Benefits;

2. Award the Estate or the beneficiary otherwise provided for under the Plan in the absence of a designated beneficiary the full value of the 401(k) Benefits, together with such pre-judgment interest as may be allowed by law;

3.     Order that JDS and Tavares make restitution to the Estate for any losses sustained by the
   Estate due to the wrongful conduct alleged herein, together with prejudgment interest;

4.     Award Administrator Kornacki the costs of this action and reasonable attorneys' fees;
   and

5.     Award such other relief as the court deems just and reasonable.

           Respectfully Submitted,

           DAVID M. KORNACKI, as the Administrator for
           the Estate of Kevin Kornacki

           By his Attorneys,

           CREVIER & RYAN, LLP.

           Katherine R. Parsons, BBO # 657280
           David B. Crevier, BBO # 557242
           1500 Main Street, Suite 2020
           Springfield, MA 01115
           (413) 787-2400
           (413) 781-8235 (fax)
           email:  kparsons@crevierandryan.com
                    dcrevier@crevierandryan.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record by first class U.S. Mail, postage prepaid this 29th day of June, 2005.



## COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.                    PROBATE & FAMILY COURT DEPT.
                                Docket No.  00D 0623

MABEL D. KORNACKI,    Plaintiff)
                               )
VS                             )    MARITAL AGREEMENT
                               )
KEVIN P. KORNACKI,    Defendant)

Agreement made this _____ *12th* day of *October* _____,
2001, between MABEL D. KORNACKI, of 163 Whitney Street, Ludlow,
Massachusetts 01056 (hereinafter referred to as the "Wife" )
and KEVIN P. KORNACKI, of 82 Reservoir Road, Ludlow,
Massachusetts 01056 (hereinafter referred to as the "Husband").

### STATEMENT OF FACTS

The Husband and Wife were married in Ludlow, Hampden
County, Massachusetts on October 17, 1992.  The parties lived
together as Husband and Wife in Hampden County, last living
together at 82 Reservoir Road, Ludlow, Massachusetts on January
18, 2000.  The parties have no minor children born of this
marriage.  The parties desire to terminate the marital
relationship.  This Agreement is entered into in conformity
with the provisions of M.G.L., Chapter 208, 1B.  The Husband
and Wife each fully understands the facts and has been fully
informed of his or her legal rights and liabilities, and each
signs this Agreement freely and voluntarily.

This Agreement is made in order to settle and determine
the Husband and Wife's rights and liabilities, to provide for
the division of their property and to decide all other matters
which should be settled in view of the pending divorce action
commenced by the Wife.

NOW THEREFORE, in consideration of the mutual promises, agreements an covenants hereinafter contained, the Husband and Wife mutually agree as follows:

1.  From the date hereof, the Husband and Wife may continue to live separate and apart from one another for the rest of their lives, and each shall be free from interference, authority and control, direct or indirect, by the other as fully as if sole and unmarried. No criminal liability is intended for violation of this paragraph.

2a. The Husband and Wife each hereby waives any rights at law or in equity to elect to take under any last will made by the other, including all rights of dower or of curtesy, and hereby waives, renounces and relinquishes unto each other, their respective heirs, executors, administrators and assigns forever, all and every interest of any kind or character which either may now have or may hereafter acquire in or to any real or personal property of the other and whether now owned or hereafter acquired by the other.

2b.  The Husband and Wife shall each have the right to dispose of his or her property by will or otherwise in such manner as each may in his or her uncontrolled discretion deem proper, and neither will claim any interest in the estate of the other, except to enforce any obligation imposed by this Agreement.

3.  The Husband and Wife hereby mutually release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them has ever had, now has, or may hereafter have against the other, upon or by reason of any matter, cause or thing up to the date of this Agreement, including but not limited to claims against each other's property, it being the intention of the parties that henceforth there shall exist as between them only rights and obligations as are specifically provided for in this Agreement and in any judgments entered by a court of competent jurisdiction.

4a. The Wife warrants, represents, and agrees that she will not hereafter contract or incur any debt, charge or liability whatsoever for which the Husband, his legal representatives or his property or estate will or may become liable. The Wife further covenants at all times to hold the Husband free, harmless and indemnified from and against all debts, charges or liabilities hereater contracted or incurred by her in breach of the provisions of this paragraph, and from any and all attorney's fees, costs and expenses incurred by the Husband as a result of any such breach.

4b. The Husband warrants, represents, and agrees that he will not hereafter contract or incur, charge or liability whatsoever for which the Wife, her legal representatives or her property or estate will or may become liable. The Husband further covenants at all times to hold the Wife free, harmless and indemnified from and against all debts, charges or liabilities hereafter contracted or incurred by him in breach of the provisions of this paragraph, and from any and all attorney's fees, costs and expenses incurred by the Wife as a result of any such breach.

5. The Husband and Wife agree that there have not been made and that they have not relied upon any promises, warranties or representations except as expressly contained herein.

6.    There are annexed hereto, and hereby made a part hereof, Exhibit A.  The Husband and Wife agree to be bound by and to perform and carry out all the terms of the said Exhibit to the same extent as if each of said Exhibit was fully set forth in the text of this Agreement.

7.    This Agreement and its terms and provisions for the division of rights in property which each of the parties now has or may in the future have is made in contemplation of the entry of a final judgment of divorce between the parties.

8.    The Husband and the Wife declare and acknowledge that each of them understands the position, circumstances and prospects of the other, and the terms, provisions and conditions of the within Agreement and believe its terms, provisions and conditions to be fair and to be reasonable.  The parties further state that they have negotiated the terms of this Agreement directly, that each has independent legal advice by counsel of his or her own choosing and that after consultation with their respective attorneys, after being advised fully and fairly as to all the facts and circumstances herein set forth and having read this Agreement, freely and fully accept the terms, conditions that each has fully described their income, expenses, assets and liabilities to the other party to the best of their knowledge and ablity, by exchanging sworn financial statements pursuant to the Supplemental Probate Court Rule 401, copies of which are attached hereto as exhibits and are incorporated herein by reference and each party has relied upon the accuracy of those statements in executing this Agreement.

9.   The within Agreement is intended to be and remain effective as a contract and shall not be extinguished by merger as a result of the incorporation in any decree or order or judgment to the contrary stating that it shall merge.  This Agreement shall in all events survive such decree order or judgment and be forever binding upon the parties.  If a judgment of divorce is hereafter entered in any court of competent jurisdiction resulting from a complaint for divorce brought by either of the parties against the other, this Agreement may be made a part of such judgment if the court so allows or be incorporated by reference in such judgment; but in any event, the within Agreement shall at all times be construed as a Agreement having independent legal significance.

10.   The Husband and Wife each expressly covenant to the other that the terms and provisions of this Agreement are not the product of fraud, coercion or undue influence, that these terms and provisions are fair, just and reasonable, that each has been represented by and had the benefit of advice of his or her independent counsel, and each signs this Agreement freely and voluntarily after consultation with his or her respective attorneys.

11.   In the event any part of this Agreement shall be held invalid, such invalidity shall not invalidate the whole Agreement but the remaining provisions of this Agreement shall continue to be valid and binding to the extent that such provisions continue to reflect fairly the intent and understanding of the parties.

12.   This Agreement shall be construed and governed according to the laws of the Commonwealth of Massachusetts.

13. This Agreement shall not be altered or modified except by an instrument signed and acknowledged by the Husband and Wife.

14.  The Husband and the Wife agree to hold each other harmless and indemnify each other for any loss, cost or damage including reasonable attorney's fees, which either may suffer as a result of the Husband's or the Wife's breach of the covenants of this Agreement.

15.  Each party agrees to execute such bills of sale or other documents consistent with this Agreement as the other may reasonably request.

Signed  at  _WILBRAHAM_____,  Massachusetts  as  to  the undersigned Husband, and _Ludlow_____, Massachusetts as to the undersigned Wife, on the day and year first above written.  Executed in several counterparts.


_Mabel D-Kornacki_____
                        MABEL D. KORNACKI


_____
                        KEVIN P. KORNACKI


-6-

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, SS.            _June 26,_ 2001

Then   personally   appeared   Mabel   D.   Kornacki   who
acknowledged the foregoing Agreement to be her free act and
deed before me,

_James V. Thompson_
James V. Thompson,     Notary Public
My commission expires: 1/20/2006

COMMONEALTH OF MASSACHUSETTS

HAMPDEN, SS.            _October 12,_ 2001

Then   personally   appeared   Kevin   P.   Kornacki   who
acknowledged the foregoing Agreement to be his free act and
deed before me,

_Virginia L. Oldenburg_
Virginia L. Oldenburg   Notary Public
My commission expires: 11/30/03

# EXHIBIT A

1.  There are no children of this marriage.

2.  <u>Real Estate</u> - The parties own real estate located at 82 Reservoir Road, Ludlow, Massachusetts as recorded in Hampden County Registry of Deeds, Book 10708, Page 119. The fair market value of the real estate is approximately $220,250.00. The real estate is subject to a mortgage to Homeside Lending in the approximate amount of $193,000.00. The Wife agrees to convey all of her right, title and interest in the real estate to the Husband by deed. The Husband shall pay to the Wife the sum of $13,552.00 for her interest in the marital home upon the delivery of the deed to him.

3.  <u>Marital Debt</u> - The parties have previously divided their marital debt to their mutual satisfaction. The Husband shall pay all of the debts listed on his Financial Statement and the Wife shall pay all of the debts listed on her Financial Statement.

4.  <u>Motor Vehicles</u> - The Husband shall retain titles to a 2000 Tacoma Truck (FMV $13,827.00), a 1985 Dodge Truck (FMV $1,000.00) and a Harley motorcycle. The Wife owns a vehicle valued at $4,2000.00. The Wife shall retain title to the motor vehicle now in her possession. The Husband shall pay to the Wife the sum of $4,814.00 for her interest in the vehicles he is retaining on or before October 12, 2001. The parties shall sign all documents necessary to effectuate the provisions of this paragraph.

5.  <u>Financial Assets</u>:

    <u>Bank Accounts</u> - The parties have previously divided all of their joint checking and savings accounts. The Husband shall retain all of the accounts listed on his Financial Statement as his separate property and the Wife waives any interest she may have in these accounts. The Wife shall retain all of the accounts listed on her Financial Statement as her separate property and the Husband waives any interest he may have in these accounts.

    <u>Stock</u> - During the marriage the Husband received ownership of JDSU stock. Pursuant to a stock split there are now 2,260 shares of stock. The Husband shall transfer to the Wife 1,130 shares of JDSU stock.

    <u>Stock Options</u> - The Husband holds 6,140 stock options. The Husband shall liquidate stock options and shall pay the proceeds of the sold options

9-13-01

Malcc Korach

to the Wife in the amount of $3,370.82, said sum reflecting the reduction in the amount received from liquidation for state and federal taxes and transfer fees.

Retirement Benefits - The Husband waives any interest he may have in the Wife's Massachusetts Teachers Retirement Fund and shall sign all documents necessary to effectuate the provisions of this paragraph.

The Husband shall transfer the sum of $8,534.00 from his 401K plan to the Wife by a Qualified Domestic Relations Order. Thereafter the Husband shall retain his 401K plan as his separate property and the Wife shall sign all documents necessary to effectuate the provisions of the paragraph.

6.    Personal Property - The Husband shall pay to the Wife $1,000.00 *from the sale of a boat on or before October 12, 2001. Within thirty (30) days of the approval of this Agreement by the Probate Court, the Husband shall transfer to the Wife the items of personal property listed on Exhibit A attached hereto which shall become the separate property of the Wife. The Wife waives her interest in all other items of personal property remaining at the marital home.

7.    Insurance - Each party shall pay for their own medical insurance and uninsured medical, dental, psychiatric, pharmaceutical and hospital expenses.

The Wife owns a term life insurance policy in the amount of $10,000.00 which she shall retain as her separate property. The Husband owns a term life insurance policy through his employment which he shall retain as his separate property.

8.    Alimony - The Wife waives any claim she may have against the Husband to alimony including past, present and future alimony. The Husband waives any claim he may have against the Wife to alimony including past, present and future alimony.

*$1,500 to Mabel for boat
  -800 to Kevin for tax refund
  +300 to Mabel for ½ of 600 refund
$1,000 to Mabel

*Mabel D. Kornacki* 9-27-4
MABEL D. KORNACKI

9-13-01
KEVIN P. KORNACKI

B

COPY

**SOJA & ABBOTT**
ATTORNEYS AT LAW
2022 BOSTON ROAD
WILBRAHAM, MA 01095

TEL (413) 543-3820
FAX (413) 543-3825

JOHN F. SOJA*
REGINA PERRY-ABBOTT

STEPHEN S. SOJA
(1908 - 1985)

PAULO G. MARTA

December 14, 2001

*ALSO ADMITTED IN
NEW YORK

T. Rowe Price
**PARTICIPANT SERVICES CENTER**
4545 Painters Mill Road
Baltimore, MD 21117

    Re:    **JDS Uniphase Employee Retirement Plan**
             **Account No.: 023602167**
             **Kevin P. Kornacki; Plan Participant**

Dear Sir or Madam:

    This firm represents the interests of Kevin P. Kornacki, a participant in the JDS Uniphase Employee Retirement Plan referenced here-above.

    Would you kindly provide the undersigned with your Qualified Domestic Relations Order requirements for the purpose of segregating a portion of Mr. Kornacki's plan pursuant to compliance with a judgement of divorce.

    Would you also provide me with the date upon which Mr. Kornacki commenced participation in the above-referenced retirement plan.

    Thank you for your prompt response.

                    Very truly yours,

                    Regina Perry-Abbott

RPA/vlo

cc:  Kevin P. Kornacki
      James V. Thompson, Esquire

## SOJA & ABBOTT
### ATTORNEYS AT LAW
2022 BOSTON ROAD
WILBRAHAM, MA 01095

TEL (413) 543-3820
FAX (413) 543-3825

COPY

JOHN F. SOJA*
REGINA PERRY-ABBOTT

STEPHEN S. SOJA
(1908 - 1985)

PAULO G. MARTA

*ALSO ADMITTED IN
NEW YORK

September 13, 2002

**JDS, Uniphase**
2789 Northpoint Parkway
Santa Rosa, California 95407

Attention:     *Wendy Serrano*
               *Benefits Department*

Dear Ms. Serrano:

Enclosed herewith please find a fully executed and certified Qualified Domestic Relations Order.

Would you kindly forward this QDRO to the Plan Administrator.

Thank you very much.

Very truly yours,

Regina Perry-Abbott

RPA/vlo
Enclosures
cc:  Kevin P. Kornacki

July 22, 2003


JDS Uniphase
Attention; Linda Schlegel/Wendy Serrano
Benefits Department
2789 Northpoint Parkway
Santa Rosa, California 95407

Dear Ms. Schlegel and Ms. Serrano:

I am writing to you at this time concerning a 401K Retirement Plan that was held by my
brother, Kevin P. Kornacki (SS#█████████). Kevin passed away on April 11, 2003
and did not have a will. On May 22, 2003, I, David M. Kornacki was appointed the
administrator of Kevin's estate.

For the past three months, I have been inventorying Kevin's assets and liabilities and
during this process I became aware of Kevin's 401K plan. On June 16, 2003, I sent a
correspondence to T Rowe Price informing them that I had been named the administrator
of Kevin's estate included were all pertinent legal documents.

According to a quarterly account summary from January 1st 2003 to March 31, 2003
Kevin's account had a value of $81,944.57 and an outstanding loan balance of $2,070.82.
Further indicated in this summary it is clearly stated that Kevin had not designated a
beneficiary for this account.

In further review of Kevin's personal documents I located among his divorce paperwork,
a fully executed and certified Qualified Domestic Relations Order by the Commonwealth
of Massachusetts Department of Trial Court in which Kevin's ex-wife, Mabel D. Tavares
f/k/a/ Mabel D. Kornacki received payment of $8,534.00. A copy of this QDRO was sent
to Ms. Serrano on September 13, 2002 to be forwarded to Kevin's plan administrator.
This document was sent from the offices of Soja & Abbot Attorneys at Law.

This QDRO further states on page 5 section K "all benefits payable under the JDS
Uniphase Corporation Employee 401K Retirement Plan, other than those payable to the
Alternate Payee (Mabel D. Tavares), shall be payable to the Participant (Kevin P.
Kornacki) in such manner and form as the Participant may elect in his sole and undivided
discretion, subject only to the Plan requirements."

In summary, the attached documents clearly show that the interests of Mabel D. Tavares
f/k/a Mabel D. Kornacki had been severed from this account when she received payment
of $8,534.00 upon executing this QDRO. As Kevin had not elected a subsequent
beneficiary it is clear that the assets in this account are the assets of the estate of Kevin P.
Kornacki and should be released to said estate forthwith.

Please contact me as soon as possible so that we may facilitate the deposit of these funds in the estate account that has been established under the estates tax ID number for my brother, Kevin P. Kornacki. Please forward all correspondence regarding this matter to my attention. Thank you in advance for your assistance in this matter.

Sincerely,

David M. Kornacki
12 Vinton Road
Sturbridge, MA 01566
(508)347-5581 (home)
(413)583-8305 (work)

enclosures:  QDRO
             Cover letter to Ms. Serrano from Law Offices of Soja & Abbot dated 9/13/2002
             Appointment of administration, naming David M. Kornacki the administrator of Kevin's estate.

JDSUniphase
Attention: Deana
Benefits Department
2789 Northpoint Parkway
Santa Rosa, CA 95407

July 30, 2003

Dear Deana,

Thank you for providing the document (401K enrollment form) as requested; although I am still waiting for the additional information we spoke of over the telephone (401K closing balance and date of distribution) your cooperation in dealing with these issues at a difficult time has been appreciated.

In addition to the information that has already been provided to you, I would like to present further information for your consideration. Per our July 23, 2003, conversation on the telephone, you had stated that a QDRO does not replace the beneficiary form that was completed by Kevin on 5-16-95, despite the fact that the QDRO directly addressed this issue, and provided the "Alternate Payee" with a settlement.

Also, during this telephone call we discussed the fact that Kevin, through T. Rowe Price, was advised repeatedly through his quarterly statements and since his divorce that he did not have a beneficiary on file. I then proposed the question: What if Kevin had decided to address this plan in a will? You stated that any additional court documentation regarding this issue, aside from the QDRO, would take precedent over the enrollment form.

I have contacted the law firm of *Soja & Abbott*, the firm that represented Kevin in his divorce proceedings, and explained to them the current decision made by JDSUniphase. I was advised by counsel that the QDRO does, in fact, take precedence over the enrollment form as the 401K plan was directly addressed and settled in the body of the QDRO. Further, the actual divorce settlement agreed upon by Kevin Kornacki and Mabel Tavares f/k/a Mabel Kornacki, also directly addresses this issue in paragraph 2a and 2b of the marital agreement. **(Massachusetts Probate and Family Court Docket # 00D 0623)** as follows:

2a. The Husband and Wife each hereby waives any rights at law or in equity to elect to take under any last will made by the other, including all rights of dower or of curtsey, and hereby waives, renounces and relinquishes unto each other, their respective heirs, executors, administrators and assigns forever, all and every interest of any kind or character which either may now have or may hereafter acquire in or to any real or personal property of the other and whether now owned or hereafter acquired by the other.

2b. The Husband and Wife shall each have the right to dispose of his or her property by will or otherwise in such a manner as each may in his or her uncontrolled discretion deem proper, and neither will claim any interest in the estate of the other, except to enforce any obligation imposed by this Agreement.

The content of these two paragraphs clearly voids any agreements or arrangements made prior to the date of this divorce, to include the enrollment form completed by Kevin in May of 1995.

In summary, the documents that have been provided to you clearly show that as of September 2002, Mabel Tavares f/k/a Mabel Kornacki has waived all rights, at law and in equity to any interest in the Estate of Kevin Kornacki. Secondly, the fact that Kevin had been informed by T. Rowe Price, through quarterly statements that he had not designated a beneficiary at the very least indicated that it was not his intention for Mabel Tavares to receive these funds, otherwise he would have taken action to facilitate this wish.

Again, JDSUniphase provided erroneous and outdated information to T. Rowe Price regarding the distribution of Kevin's assets and is liable for that error. Therefore, I am making a final request that JDSUniphase take the necessary steps to resolve this issue, and properly release these funds to the Estate of Kevin Kornacki without further delay.

If this request is not honored, as the Administrator of this Estate, I will expect to receive a written explanation as to how and why these assets were distributed in the manner elected by JDSUniphase despite compelling documentation to the contrary.

I further hope that this matter can be resolved in an efficient and honorable manner; this has been a profoundly sad and difficult time for my family and me and this complication has been an unpleasant distraction and a burden in an already trying time.


Respectfully,



David M. Kornacki, Administrator of the ESTATE OF KEVIN KORNACKI
12 Vinton Road
Sturbridge, MA 01566
508-347-5581 (home)
413-583-8305 (work)

Enclosure:
      Kevin P Kornacki Retirement Account Summary January 1, 2003 to March 31, 2003 page 3 of 5 regarding Beneficiary Information

August 4, 2003

Mr. David M. Kornacki
12 Vinton Road
Sturbridge, MA 01566

   Re: <u>Estate of Kevin Kornacki</u>

Dear Mr. Kornacki:

   Your letter of July 30, 2003 to Dena Regan in the JDS Uniphase Corporation (the "Company" or "JDSU") Benefits Group has been directed to the undersigned for a reply. Please direct all further communications concerning this matter to the attention of the undersigned, and cease all further communications with Ms. Regan.

   First, please allow me to again express the Company's condolences on your loss. We are truly sorry that it is as a result of such an occasion that we must communicate.

   Ms. Regan has provided me with the various materials that she provided to you, along with a full summary of the discussions that you both have had. I have reviewed these materials and Ms. Regan's summary, and conclude that the Company has at all times handled this matter properly and in accordance with the facts and applicable law. Further, it appears that Ms. Regan has provided you with a summary of the reasons for the Company's actions in sufficient detail. Accordingly, I do not believe any further explanation or discussion is warranted or necessary.

   While the Company is sympathetic your frustration as the administrator of the estate, the materials prepared and left on file by Mr. Kornacki govern the actions of the Company and T. Rowe Price. The Company strongly disagrees with your interpretation of the force and effect of these materials as they are interpreted under applicable law. Further, please note that your concerns were not taken lightly, and indeed the Company consulted outside specialist counsel, as Ms. Regan has so informed you, to insure that the Company complied with applicable law.

   I suggest that the Estate contact Mr. Kornacki's former spouse to resolve this matter directly with her.

       Very Truly Yours,


       Andrew Pollack
       Associate General Counsel
       JDS Uniphase Corporation


1

# MORRISON & FOERSTER LLP

ATTORNEYS AT LAW

SAN FRANCISCO
LOS ANGELES
DENVER
PALO ALTO
WALNUT CREEK
SACRAMENTO
CENTURY CITY
ORANGE COUNTY
SAN DIEGO

19900 MacARTHUR BOULEVARD
IRVINE, CALIFORNIA 92612-2445
TELEPHONE (949) 251-7500
TELEFACSIMILE (949) 251-0900

NEW YORK
WASHINGTON, D.C.
NORTHERN VIRGINIA
LONDON
BRUSSELS
BEIJING
HONG KONG
SINGAPORE
TOKYO

August 21, 2003

Writer's Direct Contact
949/251-7192
TVerrall@mofo.com

By Telefacsimile and U.S. Mail

Regina Perry-Abbott
Soja & Abbott
2022 Boston Road
Wilbraham, Massachusetts 01095

        Re:  Kevin P. Kornacki

Dear Ms. Perry-Abbott,

        This Firm represents JDS Uniphase Corporation (the "Company") in connection with the administration of the JDS Uniphase Corporation Employee 401(k) Retirement Plan (the "Plan"). After discussing the circumstances surrounding Mr. Kornacki's divorce and subsequent death with the Company, I thought that it would be worthwhile to clarify our position relative to the final distribution of Mr. Kornacki's interest in the Plan.

        As Mr. Kornacki's designated beneficiary, Ms. Mabel D. Tavares is entitled to receive his benefits under the Plan. In accordance with the Supreme Court's recent decision in *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), the fact that Mr. Kornacki and Ms. Tavares were divorced subsequent to his designation of her as his beneficiary does not alter this result. In addition, any agreements that may have been reached by Mr. Kornacki and Ms. Tavares in connection with their divorce are not effective to control the disposition of his interest in the Plan, except to the extent they are set forth in a "qualified domestic relations order" or otherwise specifically reference the Plan.

        Based on the Plan's records, effective as of May 16, 1995, Mr. Kornacki designated Ms. Tavares as his sole beneficiary under the Plan. On December 6, 2001, Mr. Kornacki and Ms. Tavares finalized their divorce. Pursuant to their divorce proceedings, on September 5, 2002, the Family Court entered a domestic relations order allocating $8,534.00 to Ms. Tavares as a full settlement of her spousal rights under the Plan; as I understand it, the Company subsequently determined that this order constituted a "qualified domestic relations order" for purposes of the Internal Revenue

oc-263794

# MORRISON & FOERSTER LLP

Regina Perry-Abbott
August 21, 2003
Page Two

Code of 1986, as amended (the "Code") and the Employee Income Retirement Security Act of 1974, as amended ("ERISA") and distributed the specified amount to Ms. Tavares. Mr. Kornacki passed away on April 11, 2003 without revoking or modifying his designation of Ms. Tavares as his beneficiary under the Plan.

Although the domestic relations order entered in the divorce proceedings does allocate a portion of Mr. Kornacki's interest in the Plan to Ms. Tavares as an "alternate payee," it does not preclude her receipt of assets in some other capacity, namely as Mr. Kornacki's designated beneficiary. There is no question that following the divorce, Ms. Tavares could only have an interest in the Plan as an alternate payee to the extent provided in a qualified domestic relations order. However, the ERISA's anti-alienation requirements discussed below did not prevent Mr. Kornacki from designating Ms. Tavares (or anyone else he chose) as his beneficiary. As contemplated in the domestic relations order itself, Mr. Kornacki's benefits under the Plan were payable "in such manner and form as [he] may select in his sole and undivided discretion, subject only to the Plan requirements." Mr. Kornacki exercised his sole and undivided discretion to retain his prior designation of Ms. Tavares as his beneficiary following their divorce.

Although I have not reviewed a copy of the divorce decree itself, I understand that Ms. Tavares may have agreed to a general waiver of her rights to receive any additional property from Mr. Kornacki, except as otherwise provided in the property settlement between the parties.

As a general matter, the Company is obligated to administer the Plan in strict accordance with its terms. *See* ERISA Section 404(a)(1)(D). This includes adherence to ancillary plan documents such as beneficiary designation forms and participant contribution and investment election forms. In addition, both the Code and ERISA generally prohibit participants from alienating or assigning their interests in the Plan. *See* Code Section 401(a)(13); ERISA Section 206(d). However, these anti-alienation requirements are not applicable to distributions made to "alternate payees" under a "qualified domestic relations order."

The operation of employee benefit plans is a matter of exclusively federal concern. Section 514 of ERISA broadly preempts any state laws or regulations that purport to regulate employee benefit plans subject to ERISA. Of particular relevance here, a number of states have attempted to regulate the manner in which beneficiary designations are made under employee benefit plans. The federal courts have uniformly rejected the application of these laws. In particular, the Supreme Court was quite clear in *Egelhoff* that the terms of ERISA-governed employee benefit plans control how benefits are to be distributed, whether to participants, their beneficiaries, or otherwise. The Supreme Court has also rejected the attempted application of state community

oc-263794

# MORRISON & FOERSTER LLP

Regina Perry-Abbott
August 21, 2003
Page Three

property laws to control the post-death disposition of a participant's interest in an employee benefit plan. *See Boggs v. Boggs*, 520 U.S. 833 (1997).

Taken together, *Egelhoff* and *Boggs* indicate that the identification of Mr. Kornacki's beneficiary and the rules governing the distribution of his retirement benefits are matters to be determined by reference to the Plan document. Section 11.04 of the Plan document indicates that a participant may designate his or her beneficiary by delivering the appropriate form to the Company. Under the Plan, such a designation remains effective unless and until the participant subsequently modifies it. Mr. Kornacki did not revoke or modify his designation of Ms. Tavares as his beneficiary. As a result, the Company is obligated to adhere to Mr. Kornacki's directions and distribute his remaining Plan benefits to Ms. Tavares.

The divorce decree entered between Mr. Kornacki and Ms. Tavares does not alter this conclusion. The decree was not styled as a qualified domestic relations order nor did it appear to contain the requisite language to qualify as such. Moreover, the general waiver of rights it contains does not specifically reference the Plan or Mr. Kornacki's beneficiary designation. The courts that have considered this issue have uniformly required such a waiver to explicitly refer to the employee benefit plan at issue and to indicate that a modification to an existing beneficiary designation is intended. *See, e.g., Hagwood v. Newton*, 282 F.3d 285 (4th Cir. 2002); *Manning v. Hayes*, 212 F.3d 866 (5th Cir. 2000); *Hill v. AT&T Corp.*, 125 F.3d 646 (8th Cir. 1997). Even if the divorce decree incorporated had such a waiver, since decree was not provided to the Company in connection with the processing of the domestic relations order, the Company would not be obligated to adhere to it. *Layton v. TDS Healthcare Sys. Corp.*, 1994 U.S. Dist. LEXIS 6709, *14-15 (N.D. Cal. 1994). Of course, if Ms. Tavares' receipt of the distribution violates her agreement to relinquish any further rights to Mr. Kornacki's assets, Mr. Kornacki's estate might have an independent basis for seeking to recover the distribution from her. However, that would be a matter for resolution solely between Mr. Kornacki's estate and Ms. Tavares.

If you have any questions regarding the foregoing, I would be happy to discuss them with you.

oc-263794

# MORRISON & FOERSTER LLP

Regina Perry-Abbott
August 21, 2003
Page Four

Sincerely,

Timothy G. Verrall

cc:   JDS Uniphase Corporation
      Mr. David M. Kornacki

oc-263794