UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| JDS UNIPHASE CORPORATION BENEFITS COMMITTEE of the JDS UNIPHASE CORPORATION EMPLOYEE 401(k) RETIREMENT PLAN<br>    Plaintiff/Counterclaim Defendant<br>v.<br><br>DOES 1 through 20, inclusive<br>    Defendants<br>v.<br><br>DAVID M. KORNACKI, as Administrator of the Estate of Kevin P. Kornacki;<br>    Defendant/Cross Claim Plaintiff/<br>    Counterclaim Plaintiff/Third Party Plaintiff<br>v.<br><br>MABEL TAVARES, an individual formerly known as MABEL D. KORNACKI;<br>    Defendant/Cross Claim Defendant<br>v.<br><br>JDS UNIPHASE CORPORATION EMPLOYEE 401(k) RETIREMENT PLAN<br>    Third Party Defendant | Civil Action No. 05-11499-MAP |

**JOINT STATEMENT**

Pursuant to the Notice of Scheduling Conference and Local Rule 16.1, the parties submit the following Joint Statement. The parties have conferred and while they differ with respect to their positions, which are set forth below, all parties agree with the facts set forth in the facts section below and the proposed scheduling plan set forth below.

**FACTS**

In 1995, Kevin P. Kornacki ("Kornacki"), now deceased, became employed by JDS and enrolled as a "participant" in the Plan as defined by Section 3(7) of ERISA, 29 U.S.C. § 1002(7).

(Kornacki's 401(k) account under the Plan shall be referred to hereinafter as the "401(k) Account"). On or about May 16, 1995, Kornacki named his then wife, Mabel Tavares ("Tavares"), as the primary beneficiary under the JDS Uniphase Corporation Employee 401(k) Benefit Plan ("401(k) Plan")("the Committee" and the "401(k) Plan" may be referred to collectively as "JDS").

On or about October 12, 2001, Kornacki and Tavares entered into a Marital Agreement in Massachusetts providing for the division of their property. On December 6, 2001, the Probate and Family Court Department of the Trial Court of the Commonwealth of Massachusetts ("Family Court") entered a Judgment of Divorce Nisi in Case No. 00D0623-DV, dissolving the marriage between Kornacki and Tavares. On September 5, 2002, the Probate Court entered a Qualified Domestic Relations Order ("QDRO") regarding the Kornacki/Tavares marital assets. Both Kornacki and Tavares executed the QDRO before it was entered as an order of the Family Court. The QDRO awarded Tavares as Alternate Payee the sum of $8,534.00 from the 401(k) Account. This amount was paid by JDS in October 2002.

On April 11, 2003, Kornacki died unexpectedly and intestate. On May 22, 2003, the Probate Court entered an Appointment of Administrator, thereby appointing Defendant David M. Kornacki as Administrator of the Estate of Kevin P. Kornacki ("Administrator Kornacki"). On August 21, 2003, the Plan distributed the entire 401(k) Account to Tavares in the amount of $81,674.94.

## POSITIONS OF THE PARTIES

### A. POSITION OF THE COMMITTEE AND THE PLAN

With respect to any further distribution of funds from the 401(k) Account, the QDRO provided Kornacki sole discretion to elect distribution under the plan, subject only to Plan

requirements. However, the QDRO expressly provides that the terms of the Plan shall prevail in the event of a conflict between the QDRO and the Plan.[1]

On May 16, 1995, from the date of inception of the 401(k) account, Tavares was named as Beneficiary. At no time after the date of dissolution of his marriage to Tavares did Kornacki revoke or modify the 401(k) Beneficiary Designation Form he had effectuated on May 16, 1995. At no time after the date of dissolution of his marriage to Tavares did Kornacki provide the Plan a new 401(k) Beneficiary Designation Form.

After Kornacki's death, on August 21, 2003, in accordance with Article 10 of the Plan and Kornacki's 401(k) Beneficiary Designation Form, the Plan distributed the 401(k) Account to Tavares -- Kornacki's designated beneficiary at the time of his death. On August 21, 2003, the Plan issued a check to Tavares in the amount of $81,674.94, which represented all of the assets in the 401(k) Account.

In arriving at the decision to pay Tavares the assets of the 401(k) account, JDS conducted a thorough review and investigation of the Kornacki file. The investigation included an analysis of the entire Kornacki file and plan-related documents, including beneficiary designation forms, Kornacki's QDRO, the JDS claims manual and JDS work flow documents. JDS communicated directly with the Administrator on numerous occasions regarding Kornacki's file. Ultimately, after an internal investigation and consultation with outside counsel, JDS determined that the balance of Kornacki's 401(k) Account should be paid to Tavares, in accordance with the operative Beneficiary Designation Form effectuated by Kornacki on May 16, 1995.
The Committee has paid fully the benefits accrued under Kornacki's 401(k) Account. The Committee will agree to any division of Kornacki's 401(k) Account, which is mutually

---

[1] Importantly, however, Tavares and Kornacki agreed to hold the Plan harmless from any liabilities that arise from the implementation of the QDRO.

acceptable to both Tavares and the Administrator Kornacki. Even before any lawsuit was filed, the Committee attempted to work with the parties to resolve the dispute, but thus far the parties have been unable to arrive at a compromise position acceptable to all. The Committee remains willing to work with the parties to achieve a division of the account assets acceptable to both sides.

**B.      POSITION OF ADMINISTRATOR KORNACKI**

### Additional Background Information

The Committee originally filed this action in California, 3,000 miles away from Defendants and the place Kornacki lived, worked and died, for (1) Declaratory Judgment against Administrator Kornacki and Tavares and (2) Injunction and Constructive Trust against Tavares. The Committee filed suit in response to a series of correspondence by Administrator Kornacki regarding JDS' wrongful denial of Kornacki's Estate's claim for Kornacki's 401(k) benefits. These included a letter dated August 10, 2004 to JDS, in which Administrator Kornacki, set forth the basis of the Estate's claim in an attempt to avoid litigation. JDS indicated several times that it would respond to Administrator Kornacki's concerns. By email dated November 23, 2004, Administrator Kornacki's counsel sent counsel for JDS a draft of the Complaint Administrator Kornacki intended to file. Without responding to Administrator Kornacki's concerns and soon thereafter, the Committee filed this action in California.

The California Court granted Defendant's Motion to Transfer Venue and transferred this case to the Western District of Massachusetts. Administrator Kornacki then asserted Counterclaims against the Committee, Cross Claims against Tavares and Impleaded and asserted claims against the Plan.

### Claims Against Tavares

Administrator Kornacki brings the following claims against Tavares: (1) a claim for breach of contract; and (2) claim for restitution and constructive trust. Tavares waived any right she had to Decedent's 401(k) Benefits in the Marital Agreement entered into and ratified by the Court at the time she and Kornacki were divorced. The Marital Agreement entered into on or about October 12, 2001 by Kornacki and Tavares constituted a waiver of any rights Tavares had to the 401(k) assets, stating:

> The Husband shall transfer the sum of $8,534.00 from his 401K plan to the Wife by a Qualified Domestic Relations Order. Thereafter the Husband shall retain his 401K plan as his separate property.

The Martial Agreement further states:

> The Husband and Wife each hereby waives any rights at law or in equity to elect to take under any last will made by the other, including all rights of dower or of curtesy, and hereby waives, renounces and relinquishes unto each other, forever, all and every interest of any kind or character which either may now have or may hereafter acquire in or to any real or personal property of the other and whether now owned or hereafter acquired by the other.

Consequently, by accepting the 401(k) benefits, Tavares breached the Marital Agreement and presently holds funds to which she is not entitled.

### Claims Against the Committee and the Plan

Administrator Kornacki brings the following claims against the Committee and the Plan: (1) a claim for benefits pursuant to ERISA § 502(a)(1)(B); (2) a claim for breach of fiduciary duties; (3) a claim for failure to provide full and fair review; and (4) a claim for attorneys' fees under ERISA.

JDS knew that Kornacki and Tavares had divorced because Kornacki's attorney informed them of the divorce. By letter dated December 14, 2001, Kornacki's attorney informed JDS that Kornacki and Tavares were divorced and requested the Plan's Qualified Domestic Relations

Order ("QDRO") requirements in order to comply with the Marital Agreement. After the Court entered a QDRO for $8,534.00 from the 401(k) Plan, Kornacki's counsel sent JDS the QDRO by letter dated September 13, 2002 and in October of 2002, JDS paid Tavares the sum of $8,354.00 as Alternate Payee pursuant to the terms of the QDRO. Furthermore, after the divorce, JDS sent Kornacki statements indicating that he had no beneficiary and that to designate a beneficiary Kornacki should contact the plan administrator. After Kornacki's death and the appointment of his brother as the administrator of his estate, Administrator Kornacki wrote to JDS on July 22, 2003, and July 30, 2003, seeking payment of Kornacki's 401(k) Benefits on behalf of the Estate. By letter dated August 4, 2003, JDS's Associate General Counsel, Attorney Andrew Pollack, denied the Estate's claim to Kornacki's retirement benefits under the Plan. By a letter dated August 21, 2003, JDS's outside counsel, Attorney Timothy G. Verral, also denied the Estate's claim. Administrator Kornacki was never given the opportunity to appeal the denial because JDS issued and sent a check, representing all of the assets in the 401(k) Plan Account, to Tavares in Massachusetts on or about August 21, 2003.

First, JDS wrongfully denied Administrator Kornacki's claim for the 401(k) benefits on behalf of the Estate because there was no beneficiary under the 401(k) Plan. Second, JDS breached its fiduciary duties by misleading Kornacki into believing that Tavares was no longer his beneficiary by providing him with statements, after his divorce that indicated that he did not have a beneficiary. Third, JDS never provided Administrator Kornacki with the opportunity to appeal the denial of the Estate's claim on the 401(k) Benefits, depriving Administrator Kornacki of a full and fair review as required by ERISA. Finally, JDS' actions in the mishandling of Administrator Kornacki's claim and its bad faith in filing this action 3,000 miles away from the residence of Defendants after receiving notice that Administrator Kornacki intended to pursue

legal remedies for the proper payment of the 401(k) Benefits warrant the payment of Administrator Kornacki's attorneys' fees.

**C.  POSITION OF TAVARES**

Mabel Tavares' position is that her former husband maintained her as the beneficiary of his 401(k) plan, that he had every right to do so under the terms of the divorce, and there is no reason to believe that he had any other intention. Ms. Tavares has been dragged into a dispute between two other parties through no fault of her own and should be entitled to an award of attorneys fees for being forced to defend this action.

### THE PARTIES' PROPOSED SCHEDULING PLAN

The parties propose the following schedule for discovery:

1. <u>Rule 26 Automatic Disclosures</u>

    The parties will exchange initial disclosures, if they have not already done so, within 14 days after the Scheduling Conference as required by Fed.R.Civ.P. 26(a)(1) and Local Rule 26.2 (September 21, 2005).

2. <u>Close of Discovery</u>

    All discovery to be completed by March 31, 2006, and in accordance with the Federal Rules of Civil Procedure and the Local Rules.

3. <u>Trial Experts</u>

    The parties shall designate their respective experts by February 28, 2006 in accordance with Fed. R. Civ. P. 26 (a)(2) and Local Rule 26.4.

4.   <u>Motions for Summary Judgment</u>

Motions for Summary Judgment shall be filed within 90 days before the date established by the Court for trial, Oppositions to Motions for Summary Judgment shall be filed within 21 days thereafter.

**CERTIFICATION OF COUNSEL AND PARTIES**

The parties will submit their respective certifications at or before the Scheduling Conference.

Plaintiff/Counterclaim Defendant,

JDS UNIPHASE CORPORATION BENEFITS
COMMITTEE of the JDS UNIPHASE CORPORATION
EMPLOYEE 401(k) RETIREMENT PLAN

and

Third Party Defendant,

JDS UNIPHASE CORPORATION EMPLOYEE
401(k) RETIREMENT PLAN

By their Attorneys,


<u>s/M. Ray Hartman</u>
Charles L. Deem, pro hac vice
M. Ray Hartman, pro hac vice
DLA PIPER RUDNICK GRAY CARY US LLP
401 B Street, Suite 1700
San Diego, CA 92101

Bruce F. Falby, BBO # 544143
Brooks A. Ames, BBO # 641192
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
Boston, MA 02110
(617) 406-6000

Defendant/Cross Claim Plaintiff/Counterclaim Plaintiff/
Third Party Plaintiff,

DAVID M. KORNACKI

By his Attorneys,


s/Katherine R. Parsons
David B. Crevier, BBO # 557242
Katherine R. Parsons, BBO # 657280
CREVIER & RYAN, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115
(413) 787-2400
(413) 781-8235 (fax)

Defendant/Cross Claim Defendant,

MABEL TAVARES

By her Attorneys,


s/Maurice M. Cahillane
Maurice M. Cahillane, BBO # 069660
EGAN, FLANAGAN AND COHEN
67 Market Street
P.O. Box 9035
Springfield, MA 01102
(413) 737-0260
(413) 737-0121 (fax)